# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. Action No. 11-0275 (ABJ) |
| | ) | |
| JARED CARDOZA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Jared Cardoza has filed a motion entitled: Motion to Reopen the Suppression

Hearing and for Reconsideration of the Court's *Terry* Stop Ruling ("Def.'s Mot.").[1] [Dkt. # 52].

Defendant's original motion to suppress was filed on December 16, 2011, and it sought

suppression of all evidence seized from defendant's apartment pursuant to an August 31, 2011

search warrant. Def.'s Mot. to Suppress [Dkt. # 12]. The Court held a suppression hearing in

---

1     On August 27, 2011, three Metropolitan Police Department officers observed a vehicle stopped in a no parking zone in the Adams Morgan neighborhood of Washington, D.C. *United States v. Cardoza*, 713 F.3d 656, 657 (D.C. Cir. 2013). Defendant and Adam Ungar were talking outside the vehicle, and one of the police officers observed each extend a hand towards the other. *Id.* The police officers made a U-turn and parked behind the stopped vehicle. By that time, defendant and Ungar were seated in the vehicle, with defendant in the front passenger seat and Ungar in the back. *Id.* Officer Johnston approached the front passenger side and spoke to the vehicle's occupants through an open window. During the conversation, Officer Johnston noticed that defendant's fist was clenched and observed him place something under his leg. He asked defendant to step out of the vehicle, and when defendant complied, observed a marijuana cigarette lying on the seat where defendant had been sitting. *Id.* The officers also recovered a plastic bag of cocaine lying on the seat next to where Ungar had been sitting. *Id.* The police officers arrested defendant and Ungar, and during a search incident to arrest, they found three cell phones, $2,880 in cash, a knotted plastic bag of marijuana, and a sheet of paper listing major cities and baseball teams on defendant's person. *Id.* at 657–58. Based on information gathered during his August 27, 2011 arrest, the police obtained a warrant to search defendant's home on suspicion that defendant was involved in drug trafficking. *Id.* at 658. Defendant sought to suppress evidence obtained as a result of the police executing that search warrant, arguing that the warrant contained several falsehoods and it was not supported by probable cause. *Id.*

this case on April 11, 2012, *see* Apr. 11, 2012 Minute Entry, and it granted the motion to

suppress for the reasons stated on the record in open court on May 31, 2012. *See* May 31, 2012

Minute Entry. The following findings from that ruling are pertinent to this motion:

- The Court determined that the initial interaction between the police officers and defendant – when Officer Johnston approached a parked car and spoke to its occupants through an open window – was not a "stop" within the meaning of the Fourth Amendment to the United States Constitution. Therefore, it did not require any level of suspicion. May 31, 2012 Status Conference Tr. ("S.C. Tr.") at 8 [Dkt. # 41]. The Court rejected defendant's arguments that were premised on the subjective intent of the officers, noting that subject motivations are irrelevant under Fourth Amendment case law. *See id.* at 8–11.

- The Court held that Officer Johnston's request that defendant step out of the car marked the turning point in the encounter where defendant was now in "custody" within the meaning of the Fourth Amendment. *Id.* at 13. But the custody was the product of a valid *Terry* stop prompted and justified by Officer Johnston's reasonable suspicion that defendant – who moments before had visibly placed something under his left leg – might pose a safety risk to Officer Johnston. *Id.* at 12–14.

- The Court concluded that the affidavit underlying the contested search warrant contained several statements that Officer Hollan made with at least a reckless disregard for the truth, and that he put forth in support of a determination that there was probable cause to

2

search defendant's apartment for evidence of drug trafficking.[2] *Id.* at 16–31. Once the questionable statements were excluded from the sworn affidavit, the remaining facts were not sufficient to support a finding of probable cause. *Id.* at 31–32. As a result, the Court granted the motion to suppress. *Id.*

The government appealed the Court's decision to grant the motion to suppress, and the D.C. Circuit reversed the suppression order. *United States v. Cardoza,* 713 F.3d 656, 661 (D.C. Cir. 2013). The Court of Appeals found that probable cause existed even after all of the questionable statements had been excised from the affidavit, and therefore, the search of defendant's apartment was proper. *Id.* at 659–61.

In response to his loss on appeal, defendant now asks this Court to reopen the suppression hearing because he believes that the "Court of Appeals relied on factual assumptions or

---

2     Specifically, the Court concluded that the following statements were included in the search warrant affidavit without regard for their accuracy:

- Paragraph 3 on page 2 stated that "[e]ach defendant extended a hand towards the other and touched the other's and with his own." Warrant Aff., Ex. D to Def.'s Mot. at 2 [Dkt. # 52-4]. The Court found that, during the suppression hearing, defendant elicited contradictory testimony from Officer Hollan that called into question the accuracy of that statement. S.C. Tr. at 21–24, quoting Suppression Hr'g Tr., Ex. 1 to Def.'s Post-Hr'g Mem. at 31, 47–48, 54, 60, 77–79, 81, 92–94, 104–05 [Dkt. # 30-1].

- Paragraph 5 on page 4 of the affidavit stated that the drugs recovered from defendant were packaged in an uncommon form of packaging. Warrant Aff. at 5. But at the suppression hearing, the officer all but conceded that the packaging was completely unremarkable. S.C. Tr. at 25, quoting Suppression Hr'g Tr. at 69.

- Paragraph 4 on page 4 of the affidavit provided that, after the police officers found marijuana on defendant's person, defendant told the officers that the significant amount of money he possessed "was unrelated to drugs" and that "he took bets on baseball games every day." Warrant Aff. at 4. At the suppression hearing, Officer Hollan testified repeatedly and consistently that defendant said he "placed" bets. S.C. Tr. at 26–29, quoting Suppression Hr'g Tr. at 41, 74, 77, 79, 96–98, 104, 108. This also led the Court to question paragraph 5 on page 5 of the affidavit, which included the officer's interpretation of the significance of the piece of paper he found on defendant's person that listed major cities and baseball games. S.C. Tr. at 29–30, quoting Suppression Hr'g Tr. at 75–77; Warrant Aff. at 5.

3

misunderstandings that this Court can and should correct before further proceedings are had in this case." Def.'s Mot. at 1. He also moves for this Court to reconsider its prior ruling regarding the lawfulness of the initial encounter between the defendant and the police. *Id.* The Court will not grant either request.

## ANALYSIS

### I. The Court will deny defendant's motion to reopen the suppression hearing.

Defendant first requests that this Court reopen the suppression hearing to address what he says were factual misunderstandings that the Court of Appeals relied upon when it concluded that the warrant was based on probable cause. Def.'s Mot. at 3–8. To support his motion, defendant cites cases that stand for the proposition that a criminal defendant may move for reconsideration of a trial court's order, and that a motion to reopen a suppression hearing functions as a motion to reconsider. *Id.* at 3.

But the Court cannot rely on that precedent to reopen the suppression hearing now. This case does not present the usual situation where a court has denied a motion to suppress, and the defendant seeks to present newly obtained evidence in an effort to alter the Court's decision. This Court *granted* the motion to suppress, and that decision was overturned on appeal. *See Cardoza*, 713 F.3d at 661. Defendant has not identified any authority that would give a district court the power – absent an express remand by the Court of Appeals – to reopen and reconsider the circuit court's determination that the warrant was supported by probable cause. Defendant's concern that the D.C. Circuit's decision rests on an inaccurate understanding of the record must be lodged with that court.

And even if this Court could reconsider the appellate court's decision that the motion to suppress should be denied, defendant has not demonstrated that reconsideration would be

4

warranted in this case. Pre-trial motions for reconsideration are committed to the sound discretion of the trial court, and different circuits apply different tests to determine when reconsideration is appropriate. *See United States v. Watson*, 391 F. Supp. 2d 89, 91–94 (D.D.C. 2005) (collecting cases). But all the various tests have at least one factor in common: a motion for reconsideration requires the existence of *new* evidence that was not previously available. *See id.*; *see also Rouse v. United States*, 359 F.2d 1014, 1015–16 (D.C. Cir. 1966). As a result, principles from the civil context, such as the understanding that a "motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), are equally applicable in the criminal context.

Defendant argues that reconsideration is necessary to correct the following "factual assumptions and misperceptions" that he claims led the Court of Appeals to find probable cause to support the search warrant:

- According to defendant, the Court of Appeals placed too much emphasis on Officer Hollan's testimony that he saw defendant and Ungar interact on the street because the officer admitted that "he never meant to state in his affidavit that he 'thought the meeting on the street was [a drug] exchange.'" Def.'s Mot. at 5, quoting S.C. Tr. at 23.

- Officer Hollan's affidavit specifies that 4.3 grams of cocaine were found in the vehicle when in fact the actual weight of the cocaine without the packaging was only 3 grams. *Id.* at 4, 6, citing Chemist Report, Ex. B to Def.'s Mot. [Dkt. # 52-2]. Defendant notes that the government admitted at oral argument that 3 grams of cocaine is not "a distribution-level quantity," and therefore he argues that the cocaine found in the car was not sufficient to support a fair probability that defendant was a drug trafficker. *Id.* at 5. Defendant also argues that Officer Hollan's knew that the weight of the cocaine was not 4.3 grams at the time the search warrant affidavit was produced, and that this is therefore an additional falsehood that must be excised from the probable cause determination. *See id.*, citing Officer Hollan's *Gerstein* Aff., Ex. A to Def.'s Mot. [Dkt. # 52-1].

- The search warrant affidavit does not refer to defendant's multiple cell phones as "disposable," and there is nothing to support the conclusion that all the cell

5

phones belonged to defendant or that possessing more than one cell phone is indicative of drug trafficking. *Id.* at 7.

- There is no support for the Court's conclusion that defendant lied about his address to the officers upon his arrest because the address was still on his driver's license and voter registration card. *Id.* at 7–8. Therefore, defendant argues, the Court's conclusion that defendant's decision to lie about his address supports a finding of probable cause is not warranted. *Id.*

But defendant does not make any effort to show that this information was not available to him at the time of the original suppression hearing, at the time he filed his post-hearing supplemental brief, or at the time of appeal. Indeed, several of these issues – in particular the nature of the exchange on the street, the significance of the cell phones, and the matter of the defendant's address – were specifically raised in the original proceedings before this Court. *See* Def.'s Post-Hr'g Mem. in Supp. of Def.'s Mot. to Suppress at 12–15 [Dkt. # 30] Suppression Hr'g Tr. at 17–18, 21, 48, 93. Moreover, all the documents cited by defendant in support of his motion were in existence at the time of the first hearing, and it appears that the issue of whether three grams of cocaine is sufficient to justify an inference of drug trafficking was addressed in oral argument in front of the Court of Appeals. Def.'s Mot. at 6.

This is fatal to defendant's motion for reconsideration. As defendant acknowledges in his motion, courts in this district have "denied motions to reopen suppression hearings ... concluding that all the evidence to be presented at the second hearing could have been obtained and presented at the first." *Id.* at 3, citing *United States v. White*, 514 F.2d 205, 207–08 (D.C. Cir. 1975); *Watson*, 391 F. Supp. 2d at 93. Defendant has not established that he did not or could not raise these factual issues previously, and he may not now reargue points that he feels

he should have made, or made differently, before. Put simply, he is not entitled to a second bite of the apple.[3]

## II. The Court will deny defendant's motion for reconsideration of the Court's *"Terry* stop ruling."

Defendant devotes the bulk of his motion for reconsideration to advancing the legal argument that his initial encounter with the police officers was not a lawful *Terry* stop. Def.'s Mot. at 9–22. But that argument is beside the point: this Court found that the initial encounter was not a *Terry* stop at all. S.C. Tr. at 8. Defendant presents no new evidence or information in support of his theory that this Court erred in concluding that the initial encounter was consensual. As a result, this argument in support of reconsideration must fail; reconsideration is not appropriate where a defendant seeks to relitigate issues on which the Court previously ruled.[4] *See New York.* 880 F. Supp. at 38.

Defendant also argues that this Court should reconsider the *"Terry* stop ruling" on the grounds that he was not allotted a fair opportunity to address the constitutionality of defendant's initial encounter with the police officers because the government did not expressly raise the "consensual encounter" theory until after the hearing. Def.'s Mot. at 8. He claims that additional testimony – provided in the form of declarations attached to his motion – demonstrates that the officers never asked any of the occupants of the car whether they would move the car out

---

3      In footnote 1 of defendant's motion, defendant refers to recordings of radio transmissions that the government only recently made available to him and that were not available to him at the suppression hearing or pending appeal. Def.'s Mot. at 1 n.1. But those recordings relate to an issue that was already vetted at the suppression hearing – the reason the officers stopped their cruiser – and the Court found that issue did not bear on the legality of the encounter with the defendant's already stopped vehicle.

4      The same rationale forecloses defendant's argument that Officer Johnston was not warranted in requesting that defendant step out of the car.

of the no parking zone, and he revives his earlier arguments about the officers' subjective intent that night. *Id.* at 22–23.

The legality of the encounter between the police and the occupants of the vehicle was one of the key issues defendant raised in his motion to suppress, so the Court is not persuaded that defendant was somehow not on notice of the possibility that the government might argue that *Terry* did not apply. This is a fundamental concept of Fourth Amendment jurisprudence that was obviously implicated here, and indeed, the Court specifically raised the issue at the conclusion of the hearing *before* the parties filed their post-hearing submissions. Suppression Hr'g Tr. at 163–64. So, since defendant does not provide any reason for why this "new" evidence could not have been presented in connection with the pre- and post-hearing briefing of his suppression motion, the Court could deny his motion for reconsideration on that ground alone.

But even more significant is that none of defendant's arguments on reconsideration demonstrate that the Court erred in concluding that defendant's initial interaction with Officer Johnston was a consensual encounter that did not require any specific level of suspicion. Whether Officer Johnston asked the driver if she planned to move the car is irrelevant to the Court's constitutional analysis, which turned on the fact that the car was already stopped when the police spoke to the occupants.

## CONCLUSION

For the reasons stated above, it is ORDERED that defendant Jared Cardoza's Motion to Reopen the Suppression Hearing and for Reconsideration of the Court's *Terry* Stop Ruling [Dkt. # 52] is DENIED.

AMY BERMAN JACKSON
United States District Judge

DATE: February 18, 2014